IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| JANICE H. DRUMMER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 05 C 1647 |
| | ) | |
| HARRIS BANK, | ) | |
| | ) | |
| Defendant. | ) | |

**MEMORANDUM OPINION AND ORDER**

MATTHEW F. KENNELLY, District Judge:

Janice Drummer has sued her former employer, Harris Bank, for race discrimination and retaliation under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-2(a) & 2000e-3(a), and 42 U.S.C. § 1981. Harris Bank has moved for summary judgment. For the following reasons, the Court grants the motion.

**Facts**

On May 6, 2002, Drummer, who is African-American, began working as a collateral specialist at Harris Bank's Business Loan Servicing Team (BLST), a division of the bank that assists bank branches in processing loans for business clients. As a collateral specialist, Drummer serviced business loans by setting up databases to monitor the loans, responding to inquiries from branch offices, and making sure documents were completed properly. Within the BLST, there were two collateral management teams, each headed by a team manager. Jane Krogh was Drummer's team manager until July 2004, at which time Debbie Daniels took over Krogh's position. The lead supervisor in charge of the BLST was Noreen O'Connor.

Unfortunately, controversy plagued Drummer's employment with Harris Bank from

beginning to end. In March 2003, Krogh issued Drummer a written reprimand for failing to meet performance standards. In August 2003, Drummer complained to Kim Gonzalez, an employee in Harris Bank's employment relations division, that Krogh had been assigning Drummer work that should have been assigned to a co-worker who was not African-American. Krogh replied that the co-worker was very busy, and Drummer's workload remained the same.

In October 2003, Drummer said she needed a piece of candy because her blood sugar was low. Krogh responded by sending Drummer an e-mail advising her that she did not have any more sick time. In November 2003, after Drummer took a day off work to care for her mother, Krogh left Drummer a phone message stating that she was not permitted to take the day off and could be terminated if she did not immediately call Krogh back. On December 5, 2003, Drummer complained to Gonzalez that "little jokes was [sic] being made about blacks and the Filipino people." On December 18, 2003, Drummer filed an EEOC charge alleging that Krogh had targeted her for adverse treatment because of her race. On February 9, 2004, the EEOC issued Drummer a notice of right to sue.

In January 2004, Drummer asked O'Connor for permission to enroll in a series of "Omega" training workshops designed to prepare employees for careers in "sale relationship management" or "credit underwriting." O'Connor responded that the training was expensive and that if Drummer wanted to enroll, she would need to prepare a career development plan explaining how the training would further her career objectives. Drummer claims that after she completed a career development plan, O'Connor said the training would not help Drummer meet her objectives. O'Connor also allegedly questioned why the bank should invest that kind of money in Drummer's career.

2

In June 2004, Drummer and Debbie Daniels, a BLST co-worker, both applied for a promotion to BLST manager. Just before Drummer was scheduled to attend an interview for the position, she was packing the things in her desk because the BLST was moving to a different space. Cathee Laughlin, a Vice President/Manager in the BLST, approached Drummer and instructed her that each employee had been assigned a specific day to pack and that Drummer was not allowed to pack on that particular day. According to Drummer, Laughlin "got loud" after Drummer attempted to explain why she was packing. Laughlin took Drummer into another room, and Drummer missed her interview. The interview was rescheduled for 7:00 a.m. the next day, but shortly after the rescheduled interview took place, O'Connor informed Drummer that Daniels had received the promotion.

On August 3, 2004, Drummer received an unclear e-mail from another Harris Bank employee, Malinda Gonzalez. Drummer told Gonzalez that she was confused about the e-mail, and Gonzalez complained about Drummer's attitude. Daniels called Drummer into her office and told her that she should apologize to Gonzalez.

On August 26, 2004, bank employee Angelo Martorana, who is not African-American, began yelling at Drummer about a computer formatting issue, and the two engaged in a heated argument. According to Drummer, Julie Ellis, Daniels' co-manager, then came up behind Drummer, began banging her pen on a filing cabinet, said "okay, okay, okay, Janice," and told Drummer to shut up. Drummer then turned to Ellis and asked her "what she had to do with it." Ellis said she was a manager on the floor, at which time Drummer claims that she turned back to her desk and proceeded to work.

After learning about this incident, Daniels immediately placed Drummer on probation.

3

Daniels testified that she determined probation was an appropriate sanction for Drummer's behavior after taking into account Drummer's previous incident with Malinda Gonzalez, her inappropriate behavior with Martorana, and, most importantly, the fact that Drummer was insubordinate to a manager. Martorana was not placed on probation. Instead, his supervisor, Lisa Turner, gave him a documented counseling session. On September 8, 2004, Drummer filed a second complaint with the EEOC. On December 21, 2004, the EEOC issued Drummer a notice of right to sue regarding this complaint.

In November 2004, Kathy Espinosa, a non-African-American co-worker in Drummer's group, yelled and screamed at Drummer. Drummer complained to Daniels, but Espinosa was not disciplined.

In early February 2005, Drummer again attempted to enroll in a training course. She asked Daniels for permission, and Daniels told her to explain in writing why she wanted to participate in the training. On February 15, 2005, Jahkelle Johnson, another Harris Bank employee, told Drummer that she should call the person coordinating the training and request that the coordinator hold a spot in the class pending Daniels' approval. Drummer says that she followed Johnson's recommendation and requested that a spot be held in the class, but that same day, the coordinator sent Drummer an e-mail stating that Drummer – instead of reserving a spot – had officially enrolled in the class. The next day, Drummer sent Daniels an e-mail explaining why she wanted to participate in the training. Daniels told Drummer that her justification for the training was insufficient and that she would not approve Drummer's request.

Drummer claims that Daniels told her to withdraw from the class and that she immediately followed Daniels' instruction. Daniels, on the other hand, claims that Drummer

4

initially refused to withdraw and that she considered terminating Drummer based on this refusal. After consulting with a lawyer, however, Daniels decided not to fire her and conducted a documented counseling session instead. O'Connor warned Drummer that "[i]f there is any further confrontational, argumentative[,] or belligerent behavior on your part, toward management or non-management employees, you will be terminated." Drummer Dep. Ex. 22.

Between February 18 and February 24, 2005, Drummer sent a number of e-mails to Harris Bank president Frank Techar, O'Connor, Daniels, and Gonzalez, among others, complaining of harassment, discrimination, and retaliation because of age, race, and gender. On March 21, 2005, Drummer filed this lawsuit against Harris Bank.

On July 20, 2005, Harris Bank held an event called the Project Enterprise celebration. Demetria James was in charge of distributing invitations for the event. James received a list of individuals invited to the event, and she sent them formal invitations. Several employees not on the list requested invitations from James, and after receiving permission from the event coordinators, James sent those employees invitations as well. Drummer was not on the original invitation list, but she, like the others, e-mailed James and asked her for an invitation. James sent Drummer an invitation, concluding, based on the event coordinators' previous acquiescence, that any employee requesting an invitation could receive one.

On July 19, 2005, O'Connor sent an e-mail to BLST members, which read as follows:

> It was just brought to my attention that several members of the BLST are contacting the organizers of the Enterprise Celebration to say that they are attending though they did not receive an invitation. Please understand that this event is by invitation only. There are many individuals within the BLST who participated in various project teams associated with the implementation related to reviewing and re-documenting procedures, testing, conversion activities, etc. While we would like to be able to invite everyone, this was a bank-wide initiative and every area was asked to supply the names of individuals who volunteered to participate in the Enterprise initiative.

5

> I have contacted the organizers to let them know that only those individuals who were on the invitation list from the BLST should be included. If you have any questions[,] you should see me.

O'Connor Dep. Ex. 21. Having received an invitation, Drummer believed that the e-mail did not apply to her. When O'Connor saw Drummer at the celebration, however, she felt that Drummer had disobeyed the e-mail's explicit instructions. The next day, O'Connor terminated Drummer for disregarding the e-mail, also taking into account Drummer's previous history of insubordination.

## Discussion

When a district court rules on a motion for summary judgment, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Entry of summary judgment is appropriate only when the pleadings, depositions, answers to interrogatories, admissions, and affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. FED. R. CIV. P. 56(c).

### 1. Direct method of proof

Title VII provides that it is unlawful for an employer to discharge any individual because of her race, 42 U.S.C. § 2000e-1(a)(1), or because she opposed her employer's unlawful employment practice or filed an EEOC charge. *Id.* § 2000e-3(a). To defeat Harris Bank's summary judgment motion, therefore, Drummer must submit evidence – using either the direct or indirect method of proof – from which a jury reasonably could find that Harris Bank discriminated against her because of her race or because she voiced opposition to what she believed was discrimination in the workplace. *Stone v. City of Indianapolis Pub. Util. Div.*, 281

F.3d 640, 644 (7th Cir. 2002).

The direct method of proof permits a plaintiff to show discrimination by offering one of two types of evidence. *Rogers v. City of Chicago*, 320 F.3d 748, 754 (7th Cir. 2003). The first is direct evidence, which allows a reasonable juror to conclude, without resorting to inference, that an employer terminated the plaintiff for an illegal reason. *See Velez v. City of Chicago*, 442 F.3d 1043, 1049 (7th Cir. 2006). This type of evidence "is essentially an 'outright admission' that a challenged action was undertaken for one of the forbidden reasons covered in Title VII." *Cardoso v. Robert Bosch Corp.*, 427 F.3d 429, 432 (7th Cir. 2005).

The second type is circumstantial evidence, which "allows a jury to infer intentional discrimination by the decisionmaker." *Rogers*, 320 F.3d at 754. The Seventh Circuit has said that circumstantial evidence of employment discrimination usually falls into one of three categories:

> suspicious timing, ambiguous statements oral or written, behavior toward or comments directed at other employees in the protected group, and other bits and pieces from which an inference of discriminatory intent might be drawn [;] . . . evidence, whether or not rigorously statistical, that employees similarly situated to the plaintiff other than in the characteristic (pregnancy, sex, race, or whatever) on which an employer is forbidden to base a difference in treatment received systematically better treatment[; and] . . .evidence that the plaintiff was qualified for the job in question but passed over in favor of (or replaced by) a person not having the forbidden characteristic and that the employer's stated reason for the difference in treatment is unworthy of belief, a mere pretext for discrimination.

*Troupe v. May Dept. Stores*, 20 F.3d 734, 736 (7th Cir. 1994).

      **a.**     **Race discrimination**

Drummer argues that she has presented enough circumstantial evidence to present her race discrimination claim to a jury. She points to Krogh's alleged unfair write-up, threatening phone calls, and extra work; O'Connor's and Daniels' unwarranted discipline and denial of

7

training opportunities; alleged derogatory jokes made about blacks and Filipinos; and her unfair termination.

Harris Bank responds by arguing that Drummer's allegations of "different terms of conditions of employment" predating December 18, 2003, the date Drummer filed her first EEOC charge, are untimely. Harris Bank argues that Drummer had ninety days to file a lawsuit based on the allegations in that charge and that the allegations are now time-barred. Drummer does not respond to this argument in her response brief and is therefore deemed to have conceded the point. As a result, Drummer cannot use Krogh's alleged unfair write-up, threatening phone calls, and extra work, or the alleged jokes about blacks and Filipinos to prove her race discrimination claim.

Drummer's remaining evidence is insufficient to withstand summary judgment under the direct method of proof. Drummer claims that O'Connor and Daniels unfairly disciplined and terminated her and denied her training opportunities, but at the summary judgment stage it is not enough for a plaintiff simply to offer evidence that she suffered an adverse employment action. *See Haywood v. Lucent Tech., Inc.*, 323 F.3d 524, 530 (7th Cir. 2003). Rather, the plaintiff also must offer evidence that the adverse employment action was taken because of her race (or some other prohibited reason). That ordinarily requires her to point to a similarly situated co-worker outside her protected class who was treated more favorably. *See Walker v. Bd. of Regents of Univ. of Wisc. Sys.*, 410 F.3d 387, 396 (7th Cir. 2005). An employee is similarly situated if she "held the same job description, w[as] subject to the same standards, w[as] subordinate to the same supervisor, and had comparable experience, education, and other qualifications-provided the employer considered these latter factors in making the personnel decision." *Bio v. Federal*

*Express Corp.*, 424 F.3d 593, 597 (7th Cir. 2005).

Drummer has not pointed to similarly situated non-African-American employees who were treated more favorably with respect to each of the three purportedly unfair adverse employment actions. She claims that non-African-American employees received Omega training, but she does not provide the names of these employees. As a result, it is impossible to determine whether these individuals were similarly situated in the factors her supervisor may have taken into account when she decided whether to allow the training. *See Oest v. Ill. Dept. of Corrections*, 240 F.3d 605, 615 (7th Cir. 2001). Drummer also maintains that other individuals received invitations to the Project Enterprise celebration from Demetria James and were not terminated or disciplined. Again, however, Drummer fails to provide the names of these individuals. Consequently, the evidence does not raise an inference of discrimination.

Drummer also claims that after her August 2004 altercation with Martorana, she was immediately placed on probation, and Martorana was merely counseled. Harris Bank responds that Martorana was not similarly situated because he reported to and was disciplined by a different supervisor, Lisa Turner. *See Franklin v. City of Evanston*, 384 F.3d 838, 847 (7th Cir. 2004) (holding that employees with different supervisors are not similarly situated where the supervisor decides on the level of discipline). Drummer does not respond to this argument. As before, she is deemed to have conceded the point.

For these reasons, under the direct method of proof, no jury reasonably could find that Drummer's denial of training, discipline, or termination were based on race.

      **b.**    **Retaliation**

Drummer also argues that she has presented direct evidence of retaliation. In a retaliation

9

case, a plaintiff proceeding under the direct method must prove that she engaged in statutorily protected expression, which in turn caused her to suffer an adverse employment action. *See Culver v. Gorman & Co.*, 416 F.3d 540, 545 (7th Cir. 2005). "A causal link between the protected expression and an adverse employment action may be established by showing that the protected conduct was a substantial or motivating factor in the employer's decision." *Id.*

In *Culver*, the plaintiff told her supervisor that she was going to file a discrimination claim with the EEOC after the supervisor gave her a generally favorable annual performance review but only awarded her a fifty cent per-hour raise. *Id.* at 543. Three days later, the defendant fired the plaintiff because she became "very short" with coworkers and refused to perform work tasks. *Id.* at 544. The Seventh Circuit held that a jury reasonably could find that the plaintiff's termination was retaliatory based on the short time period between her protected activity and termination as well as her employer's pretextual reason for her termination. *See id.* at 546-47.

Drummer argues that in this case, a jury also could infer retaliation based on the short time period between her complaint and termination and Harris Bank's pretextual reason for her termination. The problem with Drummer's argument, however, is that she was fired four months after she engaged in protected activity, *see Hughes v. Derwinski*, 967 F.2d 1168, 1174 (7th Cir. 1992) (holding that a four month lapse between protected activity and termination raises little inference of retaliation), and she has not offered evidence suggesting that her employer's reason was pretextual.

A proffered reason is pretextual if it is not the true reason someone was fired. *See Forrester v. Rauland-Borg Corp.*, No. 05-4650, — F.3d — , 2006 WL 1767760, * 1 (7th Cir.

10

June 29, 2006). Drummer contends that O'Connor fired her for attending the Project Enterprise celebration uninvited, while at the same time knowing that Drummer had in fact received an invitation. If Drummer's contention were supported by the record, this would be evidence of pretext. In reality, however, the undisputed evidence indicates that O'Connor did not fire Drummer because she did not have an invitation. Rather, O'Connor has consistently stated that she fired Drummer because she disobeyed the July 19, 2005 e-mail, specifically that part of the e-mail that said the party was for employees who volunteered to help with Project Enterprise and whose names had been submitted to the event coordinators by management. *See* O'Connor Dep. at 149, Ex. 21 at Bates # D 00302.[1] Drummer has not offered evidence suggesting that this reason was pretextual, i.e., that O'Connor actually believed that Drummer helped with Project Enterprise or that she was on the list submitted by management.

Drummer contends she has one other piece of circumstantial evidence of retaliation. She claims that O'Connor wanted to terminate Drummer in February 2005 (after Drummer enrolled in the training class without permission), but O'Connor consulted a lawyer, who counseled against termination. Then, when O'Connor decided to terminate Drummer in July 2005, O'Connor did not consult a lawyer, and Drummer was fired. The Court fails to see how this evidence suggests that Drummer's termination was caused by her protected activity. At most, it suggests that O'Connor did not want a lawyer to throw a wrench in her decision to fire Drummer. It does not, however, indicate that O'Connor's decision was based on a reason

---

[1] In her deposition, O'Connor testified that when she discussed Drummer's possible termination with human resources, she gave this reason: "[S]he admitted that she solicited an invitation from an individual that she knew through an organization they belonged to and that she couldn't identify what it was she had contributed to the project, she couldn't come up with any activities that she had done in support of the project." O'Connor Dep. at 149.

11

prohibited by Title VII.

	2.	**Indirect method of proof**

Under the indirect, *McDonnell Douglas* burden shifting method of proof, Drummer must establish a *prima facie* case by offering evidence that she was a member of a protected class, she was performing her job satisfactorily, she suffered an adverse employment action, and her employer treated other similarly situated employees outside her protected class more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 n. 13 (1973). If Drummer establishes a *prima facie* case, then the burden shifts to Harris Bank to put forth a legitimate, non-discriminatory reason for the termination. *See Clay v. Holy Cross Hosp.*, 253 F.3d 1000, 1005 (7th Cir. 2001). If Harris Bank satisfies its burden, then the inference of discrimination disappears, and Drummer must offer evidence from which a jury reasonably could find that Harris Bank's reason was a pretext for discrimination. *Id.* at 1005-06.

Drummer cannot use the indirect method to establish her retaliation or race discrimination claim for two reasons already discussed above. First, she has not pointed to similarly situated employees (either non-African-American employees or employees who did not engage in protected activity) who were treated more favorably. As noted earlier, Drummer makes conclusory statements about unnamed individuals being treated better than her, but this is insufficient to satisfy her summary judgment burden. *See Oest*, 240 F.3d at 815. Her argument that "[t]here is no evidence in the record to show that any of the other employees in Drummer's position, who requested invitations to the party [from Demetria James] . . . were fired," Pl. Resp. at 7, underscores her apparent misunderstanding of the law on this point. To defeat Harris Bank's motion for summary judgment, Drummer must point to specific individuals who attended

the Project Enterprise celebration in violation of their supervisor's instructions. She cannot rely on the absence of evidence to satisfy this burden. Second, even if Drummer were able to establish a *prima facie* case, she has not offered evidence that Harris Bank's reason for her termination was pretextual. Indeed, given the evidence Drummer has presented, no jury reasonably could find that O'Connor's stated reason was not the real reason for Drummer's termination.

In sum, whether Drummer proceeds under the direct or indirect method of proof, no jury reasonably could find that Harris Bank terminated her because of her race or because she engaged in protected activity under Title VII.

## Conclusion

For the foregoing reasons, Harris Bank's motion for summary judgment is granted [docket no. 31]. The Clerk is directed to enter judgment in favor of the defendant. The trial date of January 8, 2007 is vacated.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: July 18, 2006